R. W. MORROW V. THE STATE.

No. 17555. Delivered May 8, 1935.
Rehearing Denied, Without Writtten Opinion, June 26, 1935.

The opinion states the case.

*Jimmie MacNicoll* and *Baskett & Parks,* all of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for burglary, punishment being assessed at twelve years in penitentiary.

Appellant was indicted for burglary of the oil mill at Commerce in Hunt County, Texas, on Monday night, October 1, 1934. The mill was entered through a window, the knob of the safe was knocked off and approximately $200 taken therefrom. N. O. Cecil, Ralph Sissons and Merit Branom were also separately indicted for the same offense. Sissons and Branom had not been arrested when this cause was tried. Sissons had married a daughter of Merit Branom, who was a half-brother of Louis Fred Branom, the principal State's witness.

In view of the qualification to the appellant's bill complaining because the trial court declined to permit him to file an amended motion for new trial, we think no error is shown. All the facts which appellant hoped to incorporate in his amended motion are before us in the statement of facts.

The trial court under proper instructions submitted to the jury the question as to whether Louis Fred Branom was an accomplice witness. As we view the case the judgment must be affirmed unless from the record it appears that the witness named was an accomplice witness as a matter of law, for if under the instructions the jury found that he was not an ac-

complice witness, we think the case against appellant is sufficiently made out under the rule of circumstantial evidence.

The following facts appear which bear upon the status of Louis Fred Branom as a witness. He, with his wife, lived some nine miles east of Commerce. About a week prior to the burglary Sissons and his wife spent the night at the home of witness. The next morning witness, Sissons and Merit Branom went to the oil mill at Commerce for the purpose, as witness said, to sell some cotton to Mr. Chadwick, who was the manager of the oil mill. Merit Branom and witness went in the office to talk about the cotton and Sissons went to the door from which he could see the safe in the office. As the three parties were going home Sissons said "that the oil mill would be an easy job, or something similar to that." So far as the record reveals this was the first thing that indicated the burglary of the mill was contemplated by any of the parties heretofore mentioned. Sissons and his wife left witness' home that day, Merit Branom going away with them. The next time witness saw any of the parties involved in this transaction was on the following Sunday morning when as he was going across a field near his home he saw Sissons, Morrow and Cecil, who were traveling in a car. They inquired for Merit Branom. Witness told them where he thought Branom was, got in the car with them, and they met Branom and Lee Fisher in the road. Witness got out of the car and he and Fisher walked up the road, leaving Sissons, Morrow, Cecil and Merit Branom together. That night Sissons, Morrow and Cecil came to witness' home about midnight. Sissons said he had a couple of friends with him and wanted to know if they could spend the night. When they first came up on the porch some of them made the statement that they had started to go in the oil mill but something happened to scare them off; that they had left the "tools" out behind the mill, and that they were going to try to burglarize the mill the next night. The parties remained at witness' home the remainder of Sunday night, and all day Monday, witness' wife preparing the meals for them. Monday morning witness went to Commerce with Morrow and Sissons in their car, leaving Cecil at witness' home. They went to the oil mill—witness claiming they went there to purchase some corn. Morrow went in the mill with witness, Sissons remaining in the car. When they got back to the car Morrow said in the presence of witness and Sissons that he (Morrow) could go into that safe—referring to the safe at the mill—in three minutes with pocket knife. The parties got back to witness' home about the middle of the

morning. They remained in and around there during the day, some of them going hunting, and some helping witness haul water. It does not appear at what time Merit Branom joined the others at witness' house, but after supper Sissons, Merit and witness' wife went to Commerce, being gone probably two hours. About midnight Sissons, Cecil, Morrow and Merit Branom left witness' home. At this point, witness testified as follows: "* * * Before they left that night, there was a conversation out there on my porch about robbing the Commerce Oil Mill; Cecil asked Bob what kind of job it was going to be and he haid it was going to be a window job; that was the job they said they tried the night before and was going back and try that night. No, it was not near the midnight hour just before they left that this conversation was had, it was earlier that night; they were discussing the job they said they tried to pull the night before and had a 'rumble' and got run off and said it was going to be a window job."

Witness never saw the parties any more until the following Wednesday night at which time Merit Branom told witness "they got $187.00 out of the Commerce Oil Mill robbery." It is evident from witness' testimony that he was apprehensive that Red Williams (the night watchman at the mill) might be hurt during the burglary, and had talked to Merit Branom about it, but was assured by him that Williams would not be hurt as Merit Branom had told the others Williams was a friend of his and not to hurt him. Witness further testified: "I did not have anything to do with that burglary, knob knocking or robbery and didn't even go to Commerce in connection with it; I never did have anything on earth to do with it; I didn't have any part or plan in it or make any agreement, or make any effort to cover up after I learned of it. Yes, they just came over there and took charge of my home and said they were going to pull it and that is all I knew about it."

Both witness and his wife testified that witness remained at home after the parties left on Monday night. The wife said she knew nothing of the proposed burglary. Her testimony was substantially the same as her husband's as to the presence of the parties at her house on Sunday night and Monday.

It is not necessary to refer to other testimony further than to say it showed the burglary and loss of the money from the safe. The night watchman Williams fixed the time of the burglary between twelve and one-fifteen o'clock Monday night. He said Merit Branom came to the mill just before twelve o'clock and went with Williams on his twelve o'clock round, and

then remained with Williams until just before he made his one o'clock round. Apparently Merit's part in the transaction was to entertain Williams, while the others perpetrated the actual burglary and theft.

There can be no doubt that the witness knew of the proposed crime, and however reprehensible his silence may be it alone does not make him an accomplice.

"The mere concealment of a crime, or the mere concealment of knowledge that a crime is to be or has been committed does not make the person having such knowledge an accomplice." Branch's Ann. Texas P. C., Sec. 705. Many cases are cited supporting the text. The fact that witness went to the oil mill on two occasions before the burglary with parties who perpetrated it would furnish ground for the contention that witness was aiding the burglars to locate the safe and size up the situation. But the witness claims that both visits to the oil mill were for innocent purposes—to sell cotton and buy corn. There is no dispute of the witness' explanation of the purpose of his visits save as it might be challenged by the facts stated. The further fact that the parties spent Sunday night and Monday at witness' house, getting their meals there, would likewise furnish ground for the contention that witness aided them in this way until the opportune time arrived for another attempt to commit the crime. An accomplice witness is one who is—"* * * connection with the offense by unlawful act or omission, transpiring either before, at the time of, or after the commission of the offense, and whether such witness was present or participating in the crime or not."

Branch's Ann. Texas P. C., Sec. 702, Art. 70, P. C., in subdivision 4, characterizes one as an accomplice—"* * * who prepares arms or *aid of any kind,* prior to, the commission of an offense *for the purpose* of assisting the principal in the execution of the same."

If it be contended that the acts of the witness incidentally aided the principals, yet, before they would bring him within condemnation of the statute, it would be necessary to determine that they were done "for the purpose" of assisting the principals in the commission of the crime. Under the facts we would not be authorized to hold, as a matter of law, that the witness in question was an accomplice witness, and the jury might under the evidence before them have reached the conclusion that he was not an accomplice witness as a matter of fact.

It follows that in our opinion an affirmance is called for, and it is so ordered.

*Affirmed.*

MORROW, P. J., absent.